UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-v-

ANDY CIPRIAN,

                                              Defendant.

---

11 Cr. 1032-74 (PAE)

<u>ORDER</u>

PAUL A. ENGELMAYER, District Judge:

The Court has received an application from defendant Andy Ciprian seeking his release

from Federal Correctional Institution ("FCI") McKean pursuant to 18 U.S.C. § 3582(c)(1)(A)(i),

in light of the risk that the COVID-19 pandemic presents to his health.  *See* Dkt. 2560 ("Def. Mot.");

Dkt. 2566 ( "Def. Mem.").  The Government opposes his request.  *See* Dkt. 2579 ("Gov't Mem.").

For the reasons that follow, the Court grants Ciprian's motion.

Ciprian was a high-ranking member of a sect, known as Violate All Bitches ("VAB"), of

the violent Bronx Trinitarios Gang ("BTG").  *See* Dkt. 1089 ("Sent. Tr.") at 17.  In 2011, at

age 18, Ciprian participated in a shooting which targeted members of a rival gang.  *Id.* at 17;

Def. Mot. at 9.  Although no one was injured, the shooting took place on a public street.

Sent. Tr. at 18 (Ciprian was "very, very, very lucky . . . that no one was hit or killed").

On September 4, 2013, Ciprian pled guilty to one count of using a firearm in furtherance

of a racketeering conspiracy, in violation of § 924(c)(1)(A)(iii) and (2).  Gov't Mem. at 1.  On

March 25, 2014, the Court sentenced Ciprian to a mandatory-minimum term of 10 years'

imprisonment, followed by a term of three years' supervised release.  Sent. Tr. at 2, 27.

Ciprian has been incarcerated since December 12, 2012.  Def. Mot. at 67.[1]  He has thus served nearly 98 months of his 120-month sentence.  The Government states that Ciprian is scheduled to enter a halfway house in six weeks, on March 16, 2021, and to be released five months later, on August 13, 2021.  Gov't Mem. at 2.

On December 28, 2020, the Court received a motion from Ciprian seeking early release in light of the COVID-19 pandemic.  Def. Mot.  Ciprian argued that his youth at the time of his offense, rehabilitation in prison, and adverse childhood experiences support his release.  *Id.* at 9–11.  On December 30, 2020, the Court reappointed Ciprian's trial counsel to submit a memorandum in support of Ciprian's application.  Dkt. 2561.  On January 12, 2021, Ciprian's counsel filed such memorandum, emphasizing Ciprian's youth at the time of his offense and his rehabilitation in prison.  Def. Mem. at 8–9.  On January 27, 2021, the Government opposed Ciprian's motion.  Gov't Mem.  It notes that Mr. Ciprian's has medical conditions that make him vulnerable to severe COVID-19, and so concedes that his application presents extraordinary and compelling reasons for release.  *Id.* at 3–4.[2]  But, it argues, his release at this point would be inconsistent with the sentencing factors set out in 18 U.S.C. § 3553(a).  *Id.* at 4–5.

---

[1] In 2019, Ciprian moved to vacate his sentence under 28 U.S.C. § 2255 in light of *United States v. Davis*, 139 S. Ct. 2310, 2336 (2019).  Dkt. 2444.  On January 30, 2020, consistent with the parties' new plea agreement, the Court vacated Ciprian's firearms conviction under *Davis*, reinstated the charges in the superseding indictment, and accepted a guilty plea from Ciprian to a separate firearms charge in that indictment which carried the same mandatory-minimum sentence and which was consistent with *Davis*.  *See* Dkt. 2487 ("Second Pl. Tr.") at 25–26.  The same day, the Court imposed the same sentence it had imposed in 2014.  *Id.* at 29–31.

[2] The Government notes that Ciprian was diagnosed with COVID-19 but was asymptomatic.  Gov't Mem. at 3–4.  It does not argue that this fact negates the presence of extraordinary and compelling circumstances.  *Id.*

Under 18 U.S.C. § 3582(c)(1)(A), a court

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf . . . may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that— (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

The defendant bears the burden of proving that he is entitled to compassionate release under 18 U.S.C. § 3582(c). *See United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease."); *United States v. Clarke*, No. 09 Cr. 705 (LAP), 2010 WL 4449443, at *1 (S.D.N.Y. Oct. 29, 2010).

Originally, § 3582(c)(1)(A) did not permit prisoners to initiate compassionate release proceedings and instead required the Bureau of Prisons ("BOP") to seek such release on their behalf. *United States v. Ebbers*, 432 F. Supp. 3d 421, 422–23, 427 (S.D.N.Y. 2020). But with the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, Congress amended the law to allow defendants independently to seek compassionate release from federal courts. *Ebbers*, 432 F. Supp. 3d at 422–23.

Before the First Step Act, Congress had tasked the Sentencing Commission with identifying circumstances sufficiently extraordinary and compelling to justify a sentence reduction. *Id.* at 427 (citing 28 U.S.C. § 994(t)). The Commission did so in U.S.S.G. § 1B1.13 and its corresponding commentary. That guidance, *inter alia*, (1) sets out circumstances that present extraordinary and compelling reasons justifying release; and (2) requires that a defendant not be a danger to the community. *Id.* § 1B1.13(1)–(3) & cmt. n.1(A)–(D).

3

By its terms, however, the Commission's guidance applies only to a "motion of the Director of the Bureau of Prisons." *Id.* § 1B1.13. And the Commission has not updated § 1B1.13 or its commentary to reflect the First Step Act's amendment to § 3582(c)(1)(A) authorizing defendants to move for compassionate release on their own, without BOP intervention. Accordingly, although courts—including this one—had treated the Commission's guidance as applicable to all compassionate release motions, *see, e.g.*, *United States v. Hernandez*, 451 F. Supp. 3d 301, 303 (S.D.N.Y. 2020); *see also Ebbers*, 432 F. Supp. 3d at 428, the Second Circuit has recently clarified that § 1B1.13 "is not 'applicable' to compassionate release motions brought by defendants," rather than by the BOP, and "cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling" in such cases. *United States v. Brooker*, 976 F.3d 228, 236 (2d Cir. 2020); *see also id.* at 237 ("Neither Application Note 1(D), *nor anything else in the now-outdated version of Guideline § 1B1.13*, limits the district court's discretion." (emphasis added)).

Consistent with *Brooker*, in assessing a § 3582(c) motion brought directly by a defendant, the Court is not constrained by either § 1B1.13's enumeration of extraordinary and compelling reasons or by its freestanding requirement that the defendant seeking release not pose any danger to the community. Rather, the Court, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," 18 U.S.C. § 3582(c)(1)(A)(i), may "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it] in motions for compassionate release." *Brooker*, 976 F.3d at 237.

Here, the Government concedes that Ciprian's medical conditions present extraordinary and compelling reasons for release under § 3582(c). Gov't Mem. at 3–4. The Court agrees with that assessment. The COVID-19 pandemic is extraordinary and unprecedented in modern times

in this nation.  It presents a clear and present danger to free society for reasons that need no

elaboration.  The crowded nature of federal prisons in particular presents an outsized risk that the

COVID-19 contagion, once it gains entry, will spread.[3]  In that respect, COVID-19 poses a

heightened health risk to all inmates.  And a high-risk inmate like Ciprian, who contracts the

virus while in prison, will face challenges in caring for himself.  Beyond the risks to health, the

pandemic has also subjected all inmates, and often especially those who contract the virus, to far

more restrictive conditions of confinement, and has prompted limits on access to visitors,

including family, far beyond what could have been expected at sentencing.  For these reasons, in

the past months, various courts, including this one, have ordered the temporary release of

inmates held in pretrial or presentencing custody[4] and the compassionate release of high-risk

inmates serving federal sentences.[5]

---

[3] *See* Timothy Williams, et al., *'Jails Are Petri Dishes': Inmates Freed as the Virus Spreads Behind Bars*, N.Y. Times (May 20, 2020), https://www.nytimes.com/2020/03/30/us/coronavirus-prisons-jails.html; *see also United States v. Nkanga*, 450 F. Supp. 3d 491, 492 (S.D.N.Y. 2020) (citing *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, Ctrs. for Disease Control & Prevention 2 (Mar. 23, 2020), https://www.cdc.gov/coronavirus/2019-ncov/downloads/guidance-correctional-detention.pdf) (highlighting danger faced by those in jails and prisons).

[4] *See, e.g.*, *United States v. Chandler*, --- F. Supp. 3d ---, No. 19 Cr. 867 (PAC), 2020 WL 1528120, at *1–3 (S.D.N.Y. Mar. 31, 2020) (granting bail application, under 18 U.S.C. § 3142(i), of defendant charged with being a felon in possession of a firearm); *United States v. McKenzie*, 450 F. Supp. 3d 449 (S.D.N.Y. 2020) (granting bond pending sentencing, under 18 U.S.C. § 3145(c), to defendant who had pleaded guilty to single count of assault with a deadly weapon and had been released on bond); *United States v. Witter*, No. 19 Cr. 568 (SHS), Dkt. 40 at 2–3 (S.D.N.Y. Mar. 26, 2020) (granting bond pending sentencing, under § 3145(c), to defendant who had pleaded guilty to a narcotics offense).

[5] *See, e.g.*, *United States v. Mcrae*, No. 17 Cr. 643 (PAE), 2021 WL 142277, at *5 (S.D.N.Y. Jan. 15, 2021) (granting compassionate release to defendant with medical conditions putting him at heightened risk of severe COVID-19 and who had served 75% of effective sentence); *United States v. Lizardi*, No. 11 Cr. 1032 (PAE), Dkt. 2532 at 1–2, 9 (S.D.N.Y. Oct. 9, 2020) (same for defendant who had served 93 months of a 121-month sentence and was scheduled to be released to

The presence of extraordinary and compelling reasons for early release, however, is only a threshold prerequisite for granting such release.  The Court must also assure itself that release accords with "the factors set forth in section 3553(a) to the extent that they are applicable" before doing so.  18 U.S.C. § 3852(c)(1)(A).  Here, the Court finds, these factors are consistent with the modest expedition (by six months) of Ciprian's release date that his § 3582(c) motion seeks.

The principal bases on which the Court originally determined that the mandatory 120-month sentence imposed was reasonable were to ensure that Ciprian's sentence reflected the seriousness of his offense and the need to promote respect for the law, general and specific deterrence, and the protection of the public.  Those factors remain as weighty as at the time of sentencing.  But Ciprian's term in custody has proven more arduous than the Court could have anticipated in 2014.  In particular, for the past 10 months, he has been incarcerated during the unprecedented worldwide COVID-19 pandemic.  As has been widely chronicled, the pandemic has required extreme restrictions on prisoners' movements and visits.  It has also exposed prisoners to heightened fears of contagion.  Long before the current pandemic, courts had recognized that periods of pre-sentence custody spent in unusually arduous conditions merited recognition by courts in measuring the just sentence.[6]

---

a halfway house in five months); *United States v. Benjamin*, No. 15 Cr. 445 (PAE), Dkt. 1144 at 6–7 (S.D.N.Y. Sept. 15, 2020) (same for defendant with asthma who had served nine years of his 10-year sentence); *United States v. Wilson*, No. 16 Cr. 317 (PAE), Dkt. 656 at 4–7 (S.D.N.Y. Aug. 31, 2020) (same for defendant with heighted vulnerability who had served the substantial majority of his sentence and played a low-level role in a drug trafficking conspiracy); *United States v. Simon*, --- F. Supp. 3d ---, No. 18 Cr. 390-15 (PAE), 2020 WL 5077390, at *4–6 (S.D.N.Y. Aug. 27, 2020) (same for elderly defendant, who had serious medical conditions and played a low-level role in a drug trafficking conspiracy).

[6] *See, e.g.*, *United States v. Carty*, 264 F.3d 191, 196–97 (2d Cir. 2001) (holding that that "pre-sentence confinement conditions may in appropriate cases be a permissible basis for downward departures," and vacating and remanding the defendant's sentence "so that the district court

The same logic applies here.  A day spent in prison under extreme lockdown and in fear of contracting a deadly virus exacts a price on a prisoner beyond that imposed by an ordinary day in prison.  While not intended as punishment, incarceration in such conditions is, unavoidably, more punishing.  *See, e.g.*, *United States v. Rodriguez*, No. 00 Cr. 761 (JSR), 2020 WL 5810161, at *3 (S.D.N.Y. Sept. 30, 2020) ("The pandemic, aside from posing a threat to [a defendant's] health, has made [a defendant's] incarceration harsher and more punitive than would otherwise have been the case.  This is because the federal prisons, as 'prime candidates' for the spread of the virus, have had to impose onerous lockdowns and restrictions that have made the incarceration of prisoners far harsher than normal."); *United States v. Salemo*, No. 11 Cr. 65 (JSR), 2020 WL 2521555, at *3 (S.D.N.Y. May 17, 2020) ("BOP has taken a number of steps to mitigate the spread of the virus in federal prisons . . . [including] restrictions on visitors, restrictions on gatherings . . . [and] lockdowns lasting at least 14 days").

Ciprian will become eligible for release to a halfway house on March 16, 2021.  Gov't Mem. at 2.  He has thus served about 98 months of his total expected 100 months in prison. Counting from his expected statutory release date of August 15, 2021, he has served well over 90% of his total sentence.  The Court's judgment is that the 10 months that Ciprian has spent in prison during COVID-19 offsets the need for him, to assure just punishment, to serve the

---

[could] reconsider the defendant's request for a downward departure, and do so in the light of this holding"); *United States v. Sanpedro*, 352 F. App'x 482, 486 (2d Cir. 2009) ("In imposing the sentence it did, the district court considered . . . [among other factors,] the harsh conditions of [the defendant's] confinement at Combita," in Columbia where he was detained before being extradited to the United States.); *United States v. Salvador*, No. 98 Cr. 484 (LMM), 2006 WL 2034637, at *4 (S.D.N.Y. July 19, 2006) (holding that the defendant's pre-sentence conditions while "incarcerated in the Dominican Republic, awaiting extradition to the United States . . . warrant a downward departure"); *United States v. Torres*, No. 01 Cr. 1078 (LMM), 2005 WL 2087818, at *2 (S.D.N.Y. Aug. 30, 2005) ("depart[ing] downward, by 1 level, because of the harsh conditions of defendant's pretrial detention").

remaining few months of his sentence in prison.  His case thus tracks many others during this

extraordinary time in which the Court has granted compassionate release to defendants who had

served the majority of their carceral sentences.[7]  That is especially so given the Court's intent to

require, as a condition of supervised release, that Ciprian spend his first six months after release

in a halfway house, as he is currently eligible to do in less than two months.  As a result, the

effect of Ciprian's early release will be to expedite his release to a halfway house by less than

two months, with his scheduled release into society at large remaining in August 2021.

Ciprian's early release is also compatible with the § 3553(a) interests in general and

specific deterrence and the protection of the public.  The eight years that Ciprian has served in

federal custody, including under the harsh conditions of the last 10 months, should suffice to

deter him, and to give pause others who might emulate his conduct.  *See* Sent. Tr. at 20 (noting

need for substantial sentence to achieve deterrence).  Although, as the Government notes,

Ciprian engaged in violent and reckless acts as a member of the BTG, the prosecution of this

case resulted in long sentences for the leaders of that gang and scores of its members, including

those with whom Ciprian committed crimes.  And Ciprian's record does not reflect an inclination

to commit violent crimes outside the BTG.  *See id.* at 20–21 ("This is, for all intents and

purposes, your first offense.").  Ciprian also committed the offense for which he is in prison as a

---

[7] *See, e.g.*, *Lizardi*, No. 11 Cr. 1032 (PAE), Dkt. 2532 at 1–2, 9 (granting compassionate release to
defendant who had served 93 months of a 121-month sentence, was scheduled to be released to a
halfway house in five months); *see also Mcrae*, 2021 WL 142277, at *5 & n.2 (same for obese
defendant who had served 75% of effective sentence); *Benjamin*, No. 15 Cr. 445 (PAE), Dkt. 1144
at 6–7 (same for defendant with asthma and had served nine years of his 10-year sentence); *United
States v. Knox*, No. 15 Cr. 445 (PAE), Dkt. 1088 (S.D.N.Y. Apr. 10, 2020) (same for defendant
who had served all but seven months of an 88-month sentence); *United States v. Jasper*, No. 18
Cr. 390 (PAE), 2020 WL 1673140, at *1–2 (S.D.N.Y. Apr. 6, 2020) (same for defendant with an
immune-inflammatory disease who had served all but 34 days of a four-month sentence);
*Hernandez*, 451 F. Supp. 3d 301 at 305 (same for defendant with asthma and had served 17
months of a 24-month sentence and was scheduled for release in four months).

teenager, nearly a decade ago.  *See id.* at 24.  As the Court stated at sentencing, it is reasonable to

assess that Ciprian, now at age 28, has developed greater "maturity and self control" than he

exhibited at age 18.  *Id.* at 22; *see id.* at 24; *see also, e.g.*, *Benjamin*, No. 15 Cr. 445 (PAE),

Dkt. 1144 at 6 (defendant's maturation since commission of shooting offense as a teenager

supported grant of compassionate release).  The Court is encouraged by the significant number

of courses Ciprian has completed while incarcerated, *see* Def. Mot. at 125, and the steps he has

taken to enable him to achieve gainful employment upon release, *see id.* at 89 (letter from

potential employer stating intent to give Ciprian a job).  Finally, given the modest nature of the

sentencing reduction sought, the Court does not view any incremental risk to the public arising

from Ciprian's release today, rather than several months from now, as significant.[8]

Last, at least two other § 3553(a) factors favor release more strongly today than they did

at sentencing.  The Court under § 3553(a)(1) and (2)(D) is to consider the "history and

characteristics of the defendant" and "the need to provide the defendant with needed . . . medical

care."  These factors take on more weight given Ciprian's heightened vulnerability to COVID-19,

which, regardless of Ciprian's past, mild case of COVID-19, the Government concedes creates

extraordinary and compelling circumstances here.  Gov't Mem. at 2–3.[9]

---

[8] The Government notes that Ciprian's disciplinary record in prison reflects two infractions, both in 2019, for possessing a "hazardous tool."  Gov't Mem. at 4.  Those concerning incidents weigh against Ciprian's early release.  On balance, however, those infractions, which did not involve violence, do not outweigh the factors favoring the modest expedition of Ciprian's release date. The Court, however, reminds Ciprian that, if any violation of the conditions of supervised release were established, this Court would be responsible for sentencing him.  The Court would regard any such violation—and particularly one involving a violation of law or entailing violence—as a grave breach of the trust the Court is today putting in him.  It would almost certainly guarantee his immediate remand and imposition of a meaningful new prison term as punishment.

[9] *See, e.g.*, *Mcrae*, 2021 WL 142277, at *5 (granting compassionate release in part because medical conditions took "on additional weight" in § 3553(a) analysis); *Wilson*, 16 Cr. 317

The Court thus finds that the § 3553(a) factors, viewed collectively today, are consistent with expediting Ciprian's release by six months, as he requests. Accordingly, the Court grants Ciprian's motion for compassionate release from prison under 18 U.S.C. § 3582(c)(1)(A)(i). The Court will direct that Ciprian, as a condition of supervised release, spend the first six months following release in a halfway house, or, if a suitable placement cannot be made by the United States Probation Department, under home confinement. Such restrictions are intended to advance various interests recognized by § 3553(a), including to assist in Ciprian's lawful and successful reintegration into society. To assure time to implement this order, the Court orders Ciprian's release on February 12, 2021. The Court directs that the Government and defense, in consultation with the Probation Department, submit to the Court, by February 8, 2020, an agreed upon order setting out the terms of Ciprian's halfway-house placement, or, if a suitable halfway-house placement cannot be made, setting out the conditions of home confinement.

SO ORDERED.

_Paul A. Engelmayer_

PAUL A. ENGELMAYER
United States District Judge

Dated: February 1, 2021
New York, New York

---

(PAE), Dkt. 656 at 4–7 (finding these § 3553(a) factors to favor release of defendant with medical conditions subjecting him to heightened risks of severe COVID-19); *United States v. Davies*, 469 F. Supp. 3d 175, 179 (2020) (same for elderly defendant where serious medical conditions took "on outsize importance" in the § 3553(a) analysis); *United States v. Brown*, 467 F. Supp. 3d 209, 212–13 (2020) (same).